Number 20, 11, 7. Clean fuels alliance America versus environmental protection agency. For the petitioner, it's simple. It's often for interviews. Good morning, David lane for positions. I like to reserve 3 minutes. I'm sorry. I didn't hear you right lane lane. It's lane, but I'll respond to either 1. no, no, no, no. I want to honor you by getting right to lane. Okay. Thank you. I'd like to reserve 3 minutes. Please. May please the court in the 2020 RFS rulemaking EPA considered the issue. Of what to do about retroactive exemptions when establishing annual RFS standards determined that henceforth when setting standards for a particular year. It would adjust the standards to account for the exemptions granted retroactively for that year, but not adjust the standards to account for exemptions granted retroactively for prior years. It codified this policy in the regulation that defines the formula computing standards. The logic of this court's precedence and EPA's own statements imply that this policy is unlawful because it compels EPA to violate its core mandate of setting standards that are reasonably designed to ensure that the national volume requirements are eventually met. And because it compels EPA to engage in arbitrary decision, making by setting standards that it knows ex ante will be ineffectual. This court has said in the reset case Sinclair. And others that if EPA does not adjust renewable fuel obligations to account for exemptions, it creates a renewable fuel shortfall and impedes attainment of overall applicable volumes. Our claim is that EPA is legally required to make those adjustments, including for past. Retroactive exemptions, I'd like to just be clear about how our claim works. There are really 2 different scenarios in which adjustment to the standards is needed for past retroactive exemptions. And they call we get into the merits. What is the final agency action that you were asking us to review the 2022 rule in 2020. I'm sorry. Excuse me. The 2020. I misspoke the 2020 rule. I think that might have been a Freudian. I hope it was not definitely the 2020 rule. That is the, in that rule. Reaffirmed and readopted its policy of not making up past retroactive exemptions after revisiting the issue and that is that is itself a rule within a rule. It's a statement of generally applicable policy. What aspect of the 2020 rule has a legal effect on you today as we sit here that imposes a right or an obligation. So, every stand, every time that's RFS standards is operating, according to the policy that we're challenging, which precludes it from accounting for past retroactive exemptions and by doing that, it, but the policy didn't come from the 2020 rule, the policy that impacts you today is a policy that was adopted in whatever. Rule is operative today, which is not the 2020. I don't think that's correct. The policy stands independent of the standards that were adopted in 2020. so took a policy position. That's a statement of generally applicable policy. That will govern in the future. And then in that same rulemaking, it applied that to set percentage standards for that year. 2020. Policy isn't a final agency action. It is because it's a rule under the APA. I mean, this is standard administrative law. A statement of generally applicable policy is a rule and that is an agency action and it governs and we litigated this in the 2019 rulemaking context in the growth energy case and the court considered what it called the direct challenge to the policy of not making adjustments for retroactive exemptions. And, of course, at that point, it was time bar, because he had not reopened the issue in the 2020 rulemaking, he reopened the issue, revisited it in response to administrative petition that we filed for reconsideration of the policy and determined to maintain this policy with respect to past retroactive exemptions, but not, but it changed the position language in that rule in the 2020 rules. Where they made a full blown. Adoption of policy, as opposed to a declination to do what a petition for consideration as. I'm sorry, I don't have the best language. Like, normally, when they adopt a policy, they say things like, and you want this to be this forward going policy. Um, although it started in 2019, and you didn't call, I mean, if it started in 2019, and you were time barred on challenging it, then I don't know why you get to do it now. So, but your view is that they made some comprehensive announced policy that would govern not just 2020, but all years going forward. And so I'm just hoping you can point me to the language. Um, where they did that. Yes. So I would start at 36. And a J36, this is in the 2020 rule. The history is that in the context of the 2019 rulemaking, this is the growth energy case. We challenge this policy, the court rejected it on the grounds that he had not reopened the policy in that room during that rulemaking and had actually established it back in 2012. but in the 2020 rulemaking, EPA revisited the whole policy. They did it in response to our petition for reconsideration of the policy. So, at J36, EPA describes our petition, which column are you in on J, the middle column. And footnote 154 cites our petition for reconsideration and in that petition for reconsideration, we argued that where's the text language in the text is that the carryover paragraph atop the full middle paragraph to carry over. What language you want me to point me to for them adopting a cross study policy that's still continuing to govern today. Yeah, so 1st of all. Look at 1 footnote 154 at the bottom of the column. I see citations there to a reconsideration position. So that's our reconsideration. Where's the announcement of the policy? Okay. So then if you go up. The language is so in the middle, the 1st, full paragraph, right in the middle of the page. Says we are finalizing these changes and in turn, also completing the process of revisiting this issue that we undertook as described above in response to the above noted administrative petition. Sorry. That is right in the middle of the middle paragraph. The paragraph that begins in the proposal. Yes. Okay, and that is talking about our petition, which asked to revisit this policy of accounting for of not accounting for retroactive exemptions. And he says, it's completing the process of revisiting the issue to complete that process. It has to account for what we asked for in that petition. The above noted administrative petitions. Yes. That's the 1 that's cited in 154. How is that? Was that the only administrative petition before them in 2020? I mean, it's referring to the usually they call the petition for reconsideration is different than maybe an initial petition for action. But that is what it's referring to and that was our petition for reconsideration of this policy. Then. Um, EPA, not your issue. It is our issue the issue we presented in that petition for reconsideration was whether to account for retroactive exemptions, both past and projected. And they are definitely addressing your project. Once they talk lots about that, they give reasons for it. Yes, but they can't complete the process of revisiting the issue rates in our petition without addressing the issue of past retroactive exemptions because that's what our petition was about. And then they say, what do we do with this? Okay, please finish and then they say, I point you to. Um, well, if you bear with me for 1, 2nd, I have more quotations on this. It seems like they're talking there about the thing that you wanted about the changing the denominator, getting the prospective, the expected. Exemptions factored in that's 99.9% of what's going on here. Well, that's what they decided to do and they're rejecting the rest of what we wanted. And so they are reaffirming their policy of not making the additional adjustments for the past retroactive exceptions. I would also point you to J. A. 117 in the response to comments. Oh, sorry, that's that's the 2022. that's the problem that I've got because. In the 2022 rule, they say. We are reaffirming the modification of percentage standards formulas, the 2020 final rule to account for the projection thing. Yeah. And then say, we have chosen not this is actually say it in words here as opposed to just silence 2020 and actually say it in words and they have 3 and a half pages of analysis in 2022. we have chosen not to reallocate exempt volume for past years. That's your 2nd position. The ones you're challenging now, but yes, number 2 correct in 2020, whether through revisions to the percentage standard formulas or otherwise. This action constitutes our final and complete response to that petition. Yes. So, you omitted the 1st sentence of that, which is we are reaffirming our response to that petition. I'm not. Yes, I understand. That is that's fine. But that is action constitutes our final and complete response to that petition. Yes, because this is where they answered your arguments for 3 and a half pay. If anything is an adoption of a policy, just just declining to do something. It's not a policy that's cross cutting forward looking policy to the extent they did anything. They just decided in 2020, we're not going to do the retroactivity. Sorry, there's some retroactivity right from the big retroactivity that you want. So, in 2022, because there's just no analysis and I asked you to look at if I'm just finished my point. And then in 2022, we get 3 and a half pages of analysis, textual programmatic. I mean, all the things that we expect to see when they are making a concrete determination that may will carry forward until otherwise change and they announced that that is the final and complete response to the petition you're referencing. And so I'm really having trouble understanding how the 2020 decision. With a policy for anything other than the 2020 rulemaking, given what they did in 2022, I'd like to make a few points. The 1st is that this is in the response to comments from the 2020 rulemaking. We are not modifying the percentage standards to account for past. Retroactive exemptions, they're talking about the issue that we're presenting here. The response to comments 2nd thing is that. Okay, they just say, we're not doing something is that every time an agency says, we're not doing something in this rulemaking. That's a policy that's governing for the next. 6, 7, no, not necessarily, but it's against in the context of what's going on. There is a policy of not making adjustments for any retroactive exemptions before 2020. that's the pre existing policy. No, no accounting for any retroactive exemptions. It is a rule that governs all rulemaking. It's not the adopted every time it conducts annual standards. If it did, we would not have lost in the gross energy case. There would have been no re, open or issue because it would have just automatically had to redo the policy every time. But what the court recognizes that this is a free standing policy that governs year over year. It applies generally in perpetuity. We lost that case because he had not reopened in 2020. In response to our petition to reconsider that policy. EPA revisited the issues presented in the policy. That's what it's explaining in the middle column at 36 and it says, although in the 2020, we're making the passage you quoted where the EPA says this represents our complete and final to 2022. Okay, just position of the petition. It said the same thing early. It's fun because it revisited the issue all over again. But in the 2020 rule, it said this, we are completing the process of revisiting this issue that we undertook in response to the administrative issue is doing a lot of work there. Inside these issues, plural, your petition had multiple things that wanted most importantly account for projected. Projected exemptions. That was, I think you're big thing that was maybe maybe the other is different, but that was, I don't know, which was bigger. Okay, but they said this issue and this issue all they're talking about on that page. Is the forward projection. These issues this issue, and that's this issue is what everything they talk about on that page, which is forward projections. Well, I mean, I guess they didn't. Do the 2nd thing you asked for, I guess that. And so that's an implicit denial. They didn't do it, but they didn't do it in the context of revisiting. This completes their process of revisiting the petition. The petition was about this issue. They can't complete a process of revisiting the issue presented by the petition without revisiting the part that we're challenging here and rejecting it. And that rejection comes more explicitly at. There's no doubt that you could argue, you could challenge that denial. There's no doubt that you could at the time, but then we have in 2022, what I think is arguably, I don't have to decide it definitively, but serious reopening and reconsideration of this issue where I think for the 1st time. And tell me if I'm wrong, they devote multiple pages and their response to comments to the very precise issue. You're raising here about the prior prior year adjustments. They do discuss it more extensively more extensively and hundreds of percentages more extensively. And they say, they say, this is our final resolution of that reconsideration petition argument. And that would be a great argument that 2022 sounds like a conclusive judgment based on a record with explanations of agency balancing policies and considerations looking at the statutory text. That would be a good argument for we are locked and loaded for the going forward until less than until we completely revisit this and explain the change in position. But in 2020, because there's nothing other than implicit denial that we're not going to do that. Here's how we're adjusting it. This is 1 of the things they wanted. This is the issue we're dealing with. So, implicit denial of that, that seems like a very good argument, but they denied it in 2020, but that was for the 2020 rule definition of a policy for how do I what's the legal test for knowing when something is a policy that's going to govern over many, many rules unless and until the agency formally changes its position from a decision not to ask for a particular reconsideration petition. It is for an issue and a reconsideration. So, 1st of all, this, I mean, the 2020 rule is the denial of our reconsideration petition as well. So, I mean, there's no other documents as we deny your petition, or we have acted on your position. It is the 2020 rule document. That's exactly what they say. But the 2020 rule says we are completing the process of revisiting the issue in the administrative petition. This is the end of the process. The EP decided to do it again in 2022. that was their prerogative. What about the issue or this issue? I just think that it's not our free worded. They're talking about our whole reconsideration petition and they're resolving the reconsideration and it is a policy. It is a policy because we, this is the position that governs all standards in the growth energy case. We would not have lost on the reopener doctrine in a time bar if it were just a 1 off year by year decision. Otherwise, it would have been timely because we filed within 60 days of the 2019 rule. but the court said, no, this was a policy adopted in 2012 at the latest and it continues. It operates every year that EP set standards. And so you had to challenge it and locked in in 2012 or 2019 and if you're untimely in 2019, how can you possibly be? Timely in 2020, unless you're saying every individual rule is another adoption of the power because they revisited. They explicitly say they're revisiting the issue in the context of the 2020 rule in response for petition for reconsideration. So, they have reopened it if reopened the policy for reconsideration factors to normally look at to find that something's been reopened. You look at the entire rulemaking context. I think there's a case 2013 is a case called center for biological diversity. That explains how you do as you look at response to comments, everything the agency says final rule. And here we have a discussion of there was a policy in place. We are revisiting the policy in response to your petition petition asked for 2 things. We're giving you the projection, but not the makeup of past or not dealing with past retroactive exemptions. We elaborate on it at 80, where we say that explicitly that we're not adjusting the percentage standards to account the formula. So, I'm about the formula for computing percentage standards. And this is all embodied in the regulation at 40 CFR, 80.14.05 C. that regulation specifies the formula for computing percentage standards in 2020, not in 2022 in 2020, EPA modified that formula to include an adjustment for projected exemptions. And it did not modify the formula for, but it couldn't, if you're not going to account for the only way to modify it would be to insert a variable times 0, which would not have made any mathematical sense. So, by preserving that part of the formula that reflects their decision to maintain this as the policy after revisiting it in response to petition. So, it reopened it and they reaffirm the policy and then they did it again in 2022, but it doesn't matter. But they did it in 2022, because the Union for Concerned Scientists case and the American Maritime case established that if you have a challenge to a 1st rule, that later rule reaffirms the position, even if your challenge applies equally to both, the later rule doesn't move the challenge to the 1st rule. And that's the posture we're in. The intervenors site, Alaska, the. I guess it's Alaska, the EPA. No, Alaska, the US Department of agriculture. Or the proposition that once a rule has been superseded. A challenge to it has become moved because you. You challenged the new rule that superseded it and the last relies on. Lots of cases, including the case called. But I didn't see any response to. Alaska, or that entire line of cases in your reply brief, we respond to it. I don't think we cited the Alaska case, but our response in that brief. And my response here today is that the 2022 rule did not. The case law says that when an agency withdraws or rescinds or modifies the earlier rule, the challenge to that becomes moot. That didn't happen here. The position that was adopted in the 2020 rule is exactly the same as the position adopted in the 2022 rule and is the same as the position that has today has not changed. It had never been withdrawn. The 2022 rule never purported to withdraw or supersede the 2020 rule. All purported to do was use a different hour, the reset power to modify a different aspect of the 2020 rule, namely the percentage standards that had been set for 2020. That's the only thing that changed. Otherwise, it left it completely intact and it used the word reaffirm over and over again. And the Union of concerned scientists case in the American maritime case are more specific about this situation than the Alaska case. The fact that you have a later rule that reaffirms an earlier rule, and you have a challenge that applies equally to both does not move the original challenge. Unlike where the later rule withdraws or modifies the earlier rule that doesn't move it. But that's not the context that we're in. Maybe a simplified version of this to make sure I'm understanding you would, if your argument was in 2020, it was an arbitrary and capricious argument that they didn't sufficiently explain themselves. And then they gave a new explanation in 2022 for the same result, but it's an entirely different, more expanded explanation. You would agree your arbitrary and capricious claim would be moot. Right? I don't make no sense. That would make sense to me. Okay. But your claim in this case is. The statute requires them to account for past exemptions in 2020. they said no. so I think we all agree. You could file a petition right then saying. Not accounting for past exemptions is contrary to the statute and in your view, all that happened in 2022 is sure. They gave more explanation, but they still said, we're not doing what you want. And you're still saying that's contrary to the statute. That's correct. And that's what motor and equipment says you can amend. You can do whatever else. But if that regulation that you initially challenge is still the same. That's that is exactly correct. And otherwise it would turn into a kind of whack a mole game issues these rules every year every year. While 1 challenge is pending, they can say, oh, we're going to reaffirm that policy in this later 1 and kill our lawsuit. And then we have to go chase them in the next lawsuit, and then they can do it again in the next rule. I mean, during the 12th, a little bit confusing here is the relief. So, what do you actually envision happening? Is it that the next time we're not going to go back and recalculate the 2020 obligation? Correct? Is it that you want them to amend the regular formula formula and the regulation? And you think, I guess, the next year is going to be 2027 that when they do that, they have to account for every past exemption in setting the new standards. That's that is basically right. The way I would frame it is, I would say that you could partially vacate the 2020 rule vacated to the extent that it re, adopts the policy of not accounting for past retroactive exemptions, send it back to has to reformulate his policy probably involves amending the standard equation and the regulation. And then that would govern future rulemaking. So no, 1 of that saying, no, 1 wants or is asking to go back and change the 2020 standards or the 2022 standards or any past standards. This is about changing how operates in the future. So we have to apply this new policy as amended policy starting with 2026. What's going on now, or if it didn't complete this remand process in time, it might take the 2028 year that it begins to implement this correction, but it would be going forward. Your brief doesn't ask for your blue, your opening briefing probably just ask for remand. Well, that might have just been. The same thing. Okay. Well, I mean, I think maybe, maybe, maybe not footnote in the middle of the brief, but in both cases, you did not ask for vacatures. So you want them to remand the 2020. Rule, I think you could, you could remain without a cater given the fact that, you know, we don't need to knock out a lot of parts of the rule. You don't, we're not asking you to invalidate it entirely. So you can be man without a cater or you can just vacate the formula that they adopted. It's a huge part of the rule. You've got the denominator wrong because you didn't account for the prior years as well as prospective. That's not ordinarily remand. I mean, we're not really a remand without a cater. Yeah, yes, you want you want what they did their formula rolling out as legally wrong as contrary to statute. Yes. That's right. When have we ever done that? And just remember, I mean, I don't know the answer to that, but I think we were trying to give the court flexibility and how it dealt with this because it isn't it isn't give us flexibility by saying, you know, you can do this. We ask that you 1st vacate in the alternative remains and I'll make it to replace, but you didn't do that. You only ask for them to go back and think about it a little bit more. Okay, well, I think our intention was, it makes more sense to do the vacate. And if I can ask for it right now, then that's what I'll do. I mean, I think that partial vacator, we're not saying to vacate the entire rule. And I think that's maybe where some of the unclarity came from in the briefing, because we're not trying to formula potentially. I mean, might solve the problem in a different way from changing the formula. Because your whole was that your argument to them in 2020, or was it that no, your formula needs to account for both projected and backwards. Did you give them an alternative? I mean, in our reconsideration petition, I think we gave them alternatives and in our comment, I think we also give them alternatives. What were the alternatives? Well, it could fix it in the, it could basically add the amount to the numerator. That's changing the formula. I mean, they are in the, certainly this is embodied in the formula, but again, you could just say, now, and we're going to maybe this is semantics, but he could have a policy that says, we're going to account for this in the future by when we compute the numerator. We're just going to add this amount to that numerator. We're not going to change the regulation, but this is how we're going to implement formula was wrong. Effectively, yes, or yes, yes, because it embodies the policy that we're challenging. So, in answering the question. And whether the statutory text compels this prior year accounting for which you're advocating and have advocated. Um, if we decide that as part of the 2020 challenge, you have here. We can't go beyond the 2020 record. Right that's how we look at the look of the statute. That's did they say anything of relevance and. As we've discussed already, not that I see, I think that's correct, but I also don't think it matters because our argument is about the interpretation of the statute and the application of the precedent and that's all you need. Well, I think so the 2020 rule has some very considered agency analysis, both of the text and how it operates and programmatic implications of this. And Loper breaks quite clear. Let's give more deference remains and then we can consider. If it would be helpful and persuasive and a particularly complicated statute like this that involves a very intricate formula. We can consider the agency's expert views if consideration. And it's perspective, we ultimately decide what the statute means, but we can consider it. And so why would it make any sense to decide that question on the 2020 rule records? You just said that lacks all that considered explanation and analysis. If we would come to a different answer. If we ask that same question in 2022, whatever year from the 2022, will we have that? And if that's good, we could get more deference. To the agency's views, there's 2 different statutory interpretation questions before 2020. In 2022, the answer to 2020 and exclude everything they said in 2022. I think that only answers the question for 2020. Well, if it would be a different answer, let's just assume and I know you would argue that it's not. I don't have to let's assume. That in reviewing the statutory language as to whether they are compelled. In their formula, fractional formula to include. Prior years, if. It would make a difference to the statutory interpretation question. I'm not saying it would, but if it would. And we have to decide that based on the 2020 record where 2022 record where we have that input from the agency. So even I think the answer is no. And even in the old Chevron deference world. The answer was no, because this is a your question of legal interpretation and application of precedent and decided this year, the Sierra Club case in our brief interpretation and application of precedent or not. I'm sure what you're saying here, because a precedent on this issue. We did it look for bright other than just have the Sinclair decisions. 1 of which is post, but it wasn't it did not the relevant parts of that precedent didn't rest on a Chevron deference. It rested on the course interpretation. So, it's still valid here. My question is, and I'm not saying this is how it would come out. If we would have a different answer on the 2022 record, because it's good more. Well, for bright, good more than we would in 2020. What are we supposed to do? Well, I think that because this is really a legal question. Whatever we would have a different answer to that legal question. Yeah. If we decided we viewed it on the 2022 record. With agency import subject to skip more consideration. And we would in 2020 in the absence of that explanation. What do we should consider the arguments that EPA in 2022, which I think it decided this record, it repeated those arguments in a briefing here. And we have no objection to those arguments being in the briefing. We're not saying that we have to consider it on the 2020 record. Yes, we're going to consider we're going to consider on the 2022 record. It seems very odd then, because we would, if then, if it makes a difference. We would say it was plain statutory construction permitted by law in 2022, but not 2020, but these are legal arguments and all the arguments that EPA makes are in its brief in this case. And you can consider all the legal arguments are not bound by legal arguments made outside the record. You're all legal arguments. Give more differences to the agency's expertise. Not their attorney, which they've expressed time and again in prior rulemakings, which are all before the core, which they've expressed in their brief, which are before the court. Everything wants to stay on the subject. It has said to the core outside the 2022 rulemaking in any event, because it's purely legal question. I don't see why you couldn't look at the 20 strictly speaking. You look at the 2020 rulemaking. Correct. But because it's legal, I don't see why you can't look at any arguments EPA is making about this. It's not we're not making rulemakings going forward and backwards. For their input on this, I don't see a problem with that because this is a legal question that we're presenting. And so the court needs to come up with the best answer, and it can look at whatever it wants to look at for the best answer. Even if we, you know. In this rulemaking, if he hadn't articulated something, and it puts it in its brief, that's still for the court to consider because it has to get the best reading of the statute. Not the best reading with why closed and ignoring a bunch of other stuff, but the best reading. And there's plenty of evidence what's for to use for skip more weight. Although again, I think this precedent and the logic of what he has already said, determine the outcome of the merits of this case without without any kind of deference for his position. Any other questions. Okay, so 1 question about the merit the merit. Yeah, I'd be happy to talk about the. So, you rely on the word ensure the immediate question is ensure what. And it seems to me that 1 basic way of thinking about the question is. Is it year by year or is it cumulative? In other words, uh. And then when you look at the table, which is what just ensure the requirements of the table are met. Seems to me that your position would make sense if just starting at the top. It's a. 2000 by 2007, 8.7 billion. Instead of 4 in 2006, 4.7 in 2007, just. Seems quite clearly to envision a year by year target, not a every year. You have to look back and make up for prior under compliance. So just wanted to hear your brief articulation of where that requirement comes from. I'll try to be brief, but I want to make a threshold point about this, which is that there's really 2 scenarios in which past retroactive exemptions. Create a problem, and I think what you're talking about is kind of true up. Um, scenario where there's shortfalls in the past, which is yeah. So that I think that is the 2nd scenario. The 1st scenario to me is there are. The exemptions inflate the bank and that inflation persists and will persist into the future rule. That's for a year. That's being set. There wasn't a past shortfall yet. There's just these extra rims because of the exemptions. And so, in that scenario, you're not trying to true up across past shortfalls. What you're doing is you're saying. The standards we're setting for the future will not actually require the amount that we're specifying, because those rooms are going to be available and they will suppress the binding force of the requirements. This is actually the logic that justified the projection makeup that this court approved in the recent case. It's also a logic that's in EPA's recent supplemental and PRM for the set to rulemaking. So, that's 1 scenario, and it doesn't even generate the problem that you're pointing to the other scenario, which does generate this problem is if those exemptions created an actual shortfall in the past in the past year, because either the fuel was never used, or it was used. And then that inflation of the bank was already drawn down to avoid compliance in an intervening year, then you'd have a shortfall in the past. And so, where do we get this idea that you get to kind of sum up the shortfalls and add them to the future? Well, I, I understand your point about the text, but this core in the reset case, most recently said that the ensure duty includes increasing future year standards to ensure that volumes that should have been used in the past will eventually be used. It said that in the context of discussing the makeup of the 2016 waiver, which was added on to the 22 and 23 requirements, but there is this idea that there's sort of an obligation over the arc of the program to bring it into line with that gradually increasing set of requirements. And the EPA has authority to do that has to do that. So the question that was presented was about authority, because it was challenging what EPA did. But, of course, what the court has said over and over, including in the recent case in the winning would case and the American fuel case and others is that this is the ensure duty is EPA's core mandate. It is a requirement and. What resets does it distinguish is between that mandate and what and some discretion in the implementation. So the recent case says the statute doesn't confine EPA to a particular method of accounting for exemptions. In other words, you have to make it up somehow, but how you do it, you've got some discretion. Maybe you spread over years. Maybe you put in the numerator. Maybe put in the denominator. Maybe use projection. If you only do retrospective makeup, the projection is just 1 part of this and it's optional. You could have done it in other ways. So, I think the authorization part is a combination of the question that was being framed or the way the case is being framed and the fact that it was really a challenge to the particular method that EPA was using to account for these exemptions and broadly, there's a lot of time shifting in the program, carry over ends, carry forward deficits. They're all poke holes in the idea that these are hermetically sealed years and reinforce that. This is really a program that stretches over the entire span of the program. And that's what needs to ensure following up on question in. That same provision, I guess, go to a moment that 1. The phrase about promulgating regulations to ensure in both the 1st sentence of that paragraph talks about no later than 1 year after August 8, 2005, it says you are to ensure that gasoline sold. That EPA, the administrator is to ensure that gasoline sold or introduced into commerce in the United States. I'm going to skip language there on an annual average basis. What what work is average doing there? I don't know if he has ever. Spoken precisely to that issue. I think it can be understood to mean exactly what. Uh, we're saying that maybe it's not a mathematical average, but actually that. Across the years, you know, if you're supposed to have 20 in 1 year and 25 in the next, and you do 22 and 1 and 23 in the next. And you combine them, then you are hitting the requirements on an average annual basis. They're all sort of netting out to equal the total amount supposed to be used because it uses the same phrase on annual average basis. In the 2nd sentence, which is for. Regulations, you know, after December of 2007, right? But. They don't have the annual average basis language. Later on about subsequent. But correct me if I'm wrong. No, I think that's the only in the other provisions that have the ensure language. I think those are the only 2 that use the phrase on an annual average basis. I don't think that that language is, I think it supports our position for the reasons I just said, but I don't think it's essential to our position again. The courts recognize this sort of. Uh, you know, broad sweep of the program, ensure duty on multiple occasions, the national petrochemical case for APA took the 2009 requirements and added it to the 2010 and the court said, yes, ensure duty means that you have to eventually make sure that the. The volumes are are met across the years, because you relate to the mean, you abandon that year to reset case that it again, we said you have to do it across the years in which case in the reset case. The same reset case, the language. I think it's a 891 or 893 and it said. I'll read you the. 893, the court deemed on persuasive. That's a quotation that the statute does not provide a true mechanism on the back end. Sorry. Which column are you in? Which paragraph? Uh, on 893 give me a moment to get to get the case. Are you looking at a Westlaw version of this? Are you in the paragraph that begins with to start? We conclude. Okay, the next one. The part I just quoted is in that paragraph and then I'm going to go further down. So, in that paragraph, they say the refinery petitioners argue the statute does not provide a true mechanism on the back end of things. Don't go as planned. That argument is on persuasive. The next paragraph, we had made clear that you must ensure the applicable volumes are met regardless of delay and then therefore may increase later year volumes to make sure that volumes that should have been met in earlier years are eventually sold or introduced into commerce. That is the lesson lesson and national petrochemical may well, that goes to what I thought you and maybe I misheard you. I thought you said they were required by the statute. Well, that goes to my point earlier with with judge Garcia that this is the ensure duty is a mandate. It is obligatory. The case was framed in terms of authorization, because that's all that the petition needed to show. And what the court said was. The insurgency is mandatory, but that doesn't confine to a particular method for accounting for exemptions. So there is. Really, the question was, could EPA use this projection method to account for exemption? And the court said, yes, EPA could also account for exemptions in other ways, but it has to eventually make sure that these obligations are made up. Now, in this context, it's talking specifically about making it the 2016 waiver. I just want to be clear. This passage is not about the exemption part, but I am reading ensure duty. That is controlling in both of these both parts of the decision, and I'm putting together the things the court is saying in those 2 sections of the opinion response to judge Wilkins question about annual average basis that you answered it by saying average annual basis. I think I think the 1st time. Yeah. Yeah. Average annual basis would would have been very helpful language for you. Because that average annual basis, which is just you're averaging a basis over the years, but this does not say average annual. This is annual average. If you think about an annual air average of something that sounds like an average within that year. Yeah, I'm not sure that really makes sense. So, in the context of the program, I mean, what's required is an amount. Not an average, but the standards are, you have to there's a, there's a volumetric requirement, which is the number of gallons of renewable fuel and there's 4 of them. And then there are 4 percentage standards that everybody has to meet to generate 1 volume and. I'm sold into commerce and I think would annual average basis just be a way of saying, we're not going to require it be a program January, February, March, April, May. Instead, as long as the average number over the year, that year, that 12 month period satisfies the required amount percent calculated as a percentile or not. Introduced into commerce, if that's what they mean, I don't know. It's hard to know. This is it does seem striking that they don't say average annually. Yeah, annual average, which sounds to me very different. It may just be more of a drafting error than anything else, because what you're what you just proposed for a plain text argument doesn't rest on that. I got it twice in here. Our argument doesn't rest on that analysis of all the relevant language suggests that there would have been a very easy way to say your point average annual. And they didn't. Twice, I don't think the drafting or it's your twice. Well, I don't think it can mean what you just proposed because the compliance is not determined by averaging the months. It doesn't matter what anyone does in 1 month or another month. What matters is what they do over the course of the year. That's exactly what annual average means. Well, you would just say the total. So, why would you the total and then back into an average every time I said it the way they said it, I would, I would be a nonstop job just doing that. Well, I just think that that means that it doesn't to me. It doesn't make any practical sense to use that language to me when you're proposing that much simpler solution is just the amount that's used in the response to him, but it supported your view. Yes. It doesn't work because it doesn't say what you need it to say. Well, I think that what I'm saying is a more sensible construction of that language, because the alternatives don't make any sense to me. But I also think the argument works regardless of that language. I don't think that language has driven any of the course decisions on the ensure duty. The court is still articulated this duty to make up over years. The court is still articulated this duty in the recent case speaking about their projections that it helps ensure that the future standards will actually require the volumes that are being specified and required. And we'll not create under compliance and all comes from the ensure duty. That's we're resting on and none of that turned on the language of the annual average basis. Any questions 1 last question about the breadth of the argument. So it seems like the logic is. Once EPA knows there was an exemption in past year, the results and shortfall, it has to make up for it. Seems like everyone tries to disclaim that they would have to do the same thing. If shortfalls happen for other reasons, like overall fuel production just ends up being lower than expected. The logic of your argument, I think, would suggest that they do have to make up for that kind of shortfall too. And is that right? And if not. Why not? How do you limit your position to just these exemptions? So a couple of things in the Sinclair case in the recent case, the court drew that distinction and said, we're going to require a makeup and we're only talking about this true up scenarios where the exemptions already created a shortfall. Not the prospective shortfall doesn't generate this problem, but where there's already been a shortfall and you're going to have a true up the court said, in the context of the 2016 waiver analysis. It distinguished between making up for the waiver and making up for a technical error inherent in the projection of what independent 3rd parties are going to do in terms of how much gasoline or diesel they're going to use. And, of course, you don't have to make up for those errors. You have to make up for the 2016 waiver. We would say that the exemption is like the waiver, because these are programmatic actions, but they're not independent actions by 3rd parties. There's 2 other ways of thinking about this. 2nd, is that the gasoline shortfall doesn't really create a shortfall. It creates a shortfall with respect to the volumetric requirements, but that biometric requirement on the program gets operationalized as a percentage and the gasoline shortfall does not create a shortfall relative to the percentage. Just the percentage still operates, whereas the exemptions create a shortfall, not only with respect to the volumetric requirement, but also with respect to the percentage requirement percentage ends up being lower than was specified because of the exemptions. And I thought the problem I have with that is that the reason that the percentage is off. Is that something was included in the denominator that shouldn't have been included in the denominator? Right? Which is the amount of. Fuel. Use, we were introduced into commerce by the small refineries that. Ended up being exempted, but they were. Their production was counted towards the amount in the denominator. Correct? That is 1 that is correct. It's 1 way of. Of understanding what went wrong well, Sinclair reset said that if. There's an error in the projection of the denominator. That's, you know. Kind of, you know, how things go. And, you know, these projections can be off. The legal error that has to be corrected is an error in the numerator. That's what Sinclair resets it. So, if we look at it. As an adjustment to the denominator. Doesn't Sinclair reset. I mean, maybe it doesn't do your arbitrary creatures. But when they do your. Statutory construction argument. So, I don't 1st of all, I don't think I agree with your reading of the recent case because. The accounting for exemptions. That EPA for projected exemptions that EPA adopted and was proved in that case was an adjustment to the denominator. And the gasoline is also in the denominator. So, the court said the ensure duty allows EPA to adjust the denominator for exemptions and it does not require EPA to adjust the denominator for gasoline. So, I don't think it's about the denominator. Sinclair case 101F4 at 890. Okay. And the paragraph that begins the 2 situations are materially different. Yes, I think what the court is talking about there is specifically about the 2016 waiver, which was a numerator problem. Because it caused EPA to specify a lower total renewable fuel volume than it should have. That's the numerator. And it says that when there's a numerator has been set too low, that is a legal mistake. And the resulting percentage standard is subject to vacature. But then they say that if the denominator is set too high, i.e. incorrectly forecasting total fuel usage, they say that that is a technical error. Inherit in the nature of projecting events that have yet. To occur, yes. So, that's not. According to this case, a legal error in the sense of you have, at least the way I read that. That setting the denominator too high. Is not a legal error in the sense of. Violating the statute. So, a couple of things 1 is, I don't think that. Should be read to mean a to draw a categorical line between numerators and denominators because the projection of exemptions is done in the denominator. And the court said EPA can make that adjustment to the denominator. That's 1 thing. The 2nd thing is that we can implement what we're asking for through a numerator adjustment, but it could increase the volume. But just my point is the fact that they can adjust the denominator. Doesn't answer the question of whether they must. In this case, says the way I read it. That it's not a requirement. It's not a mandate. It's not something that they must. They certainly are not required to adjust the denominator that goes to the particular methods court says the statute does not confine a particular methods for accounting for the exemptions. Maybe it doesn't in the denominator. Maybe it doesn't in the numerator. But it's core mandate and that is a mandate is to ensure that the volumes are met and that includes increasing future years to make up for volumes that should have been used in past years. And that includes increasing future years where there are available wins that result from exemptions that would cause those future requirements to not actually require the specified amount of noble fuel that could be done through a correction through the numerator. That's where he has planned the joints and it can be done spread over multiple years. He has planned the joints, but there is this fundamental mandate, which all this sits on top of and right now is simply ignoring part of that mandate. All right, I think that's the question. I apologize. You're trying to answer. Thank you. We appreciate that. I'll give you a minute. Thank you. May it please the court. I'm Kimberly Kimball here today on behalf of EPA. The portion of the 2020 rule petitioners challenge here has been superseded the sole component of the 2020 rule that petitioners attempt to tether their claim to is EPA's change to 2 factors in the denominator of the percentage standard formula, but EPA fully reconsidered those 2 factors to make sure that they are not going to be used in the future. Those 2 factors, as well as the percentage standard formula as a whole in the 2022 rule. Accordingly, the 2022 rule has superseded the 2020 rule and this case should be denied as new case should be dismissed as new or under the doctrines of waiver forfeiture or latches. If it's your best case for a theory that. Let's assume that 20, I know the 2020. This policy was a policy was adopted to not go back to prior years and adjust for those and 2022, you look again and say, yep, we were right in 2020, not going backwards. What is your best case that what occurred in 2022 supersedes. The 2020 policy adopted in 2020, so that it can no longer be challenged. So, 2 things 1st, to your point before, I don't think it's fair to say that EPA really adopted a policy in the 2020 rule of not going back to correct past years exemption as your honor noted. There's nothing in the 2020 rule that discusses that whatsoever, but the best case in the, in the fact that the formula has been superseded, I think, is the Alaska Department of agriculture case that judge Wilkins noted. What do you mean? The formula has been superseded the formula is the same. But the EPA completely reopen the formula to comment on it fully considered it fully considered petitioners arguments that past exemption past years exemption should be considered for the 1st, my hang up. Right? If, if all we had was the 2020 rule, not the 2022 rule, you still would have had a final rule that rejects their legal argument. You might have done it without any explanation, but you rejected it and they could challenge it. And we would have before us today, a pending challenge to the 2020 rule as contrary to law, because it didn't account for past exemptions. And we would adjudicate that today, right? If there wasn't a 2020 rule, 2022 rule that would be live. Yes. And then for everything I've just said, the 2022 rule doesn't seem to change anything about the legal question. We would still ask. Is it contrary to the statute to not account for past exemptions? And that seems like the motor and equipment case. There was a, they superseded the rule in all sorts of ways, but they kept the regulation. 1 of the regulations, but the petitioners initially challenged in place. And we said it wasn't moved. So, I think a couple of things 1st, the, the 2022 rules fully considered additional things that were not considered in the 1st rule and had this court considered the 2020 rule and found the EPA insufficiently explained what it did in 1000% agree that any arbitrary and appreciates arbitrary and capricious claim would be moot. But a contrary to law claim, setting aside judgment, that's a very good point about skid more has nothing to do with what you said in the record. It's a question about the statute and whether your regulation complies with it. And that. It doesn't matter what else you said in the 2nd rulemaking. That's a fair point. Although I would also note that the 2020 rule was not considering whether or not to address the past. And the past year's exemption, the 2020 rule is specifically considering only whether to address the, the projection. But, like, you agreed with me that after the 2020 rule, when they file their petition for review, there's a live challenge to the legal question. Is it contrary to law not to account for past exemptions? So, there was a live dispute, and then you need an argument that something about the 2022 rule moots that live dispute. And I also think you just agreed that nothing about the 2022 rule. Alters the legal question that was live, contrary to the statute. To not account for past exemptions, that's fair that what changed was the, what changes the record on which EPA considered the rule. So, EPA reconsidered the formula and considered various various aspects of the formula, but the, but the thing that changed was the record on which EPA considered it with respect to laborist. But doesn't that mean that if there were an arbitrary and capricious challenge to the extent of the reasoning that is moot, but the contrary to law challenge is not moot because nothing has changed. Well, I think that, well, to judge the last point, the fact that there is this record could provide more deference, but I take your point that the, that the formula did not change between the 2 rules. But it is also true that the 2022 rule adopted the formula and new. So, if this court were to vacate the 2020 rule, there is no practical effect because the formula is still there because of the 2022 rule. All this court could do is issue an advisory opinion that EPA should also reconsider the 2022 rule. We can't hold the regulation violates the statute in a way that requires you to amend your regulation going forward. You could hold the EPA's adoption of the regulation in 2020 violated the statute and the EPA should, I guess, consider that in deciding whether or not to reconsider the 2020, 2022 rule. Seems to me that if that is true, then all of our cases saying, if there's an ongoing policy, that's repeated in new regulations, but not meaningfully changed that they don't really mean anything. Because we must be able to grant relief the relief, even without the 2022 rule in this kind of a case would be totally perspective. It would be next time you do 2022, 2020 rules set aside. We obviously can't go back to 2020 and make you do it right. But now, going forward, you must comply with our interpretation of the statute. And it just seems like that could be a remedy in this case, too. When you come up for 2027, you have to follow the statute. Well, but in order to do that, well, I guess the it's true that the, that the legal question is a question that remains in every year by EPA full consideration of that question, I think is something that this short, this court should take into consideration and deciding whether or not to decide the issue. And I, I, I take that that is less of a, an article 3 mitness issue and more of just an equitable doctrines issue and more of a consideration of EPA had a better record in which it fully considered these issues in a later rulemaking. And therefore, this court should consider this question, or should have considered this question in the later rulemaking and petitioners had the opportunity to present this issue in the 2022 litigation. But instead of actually arguing this issue, they intervened on our behalf and defended the rule. And I will yield to my colleagues, but 1, just small question. What does annual average basis mean? So, I, I agree that I don't think EPA has spoken to this issue. I do think that it's fair. So, 2 things 1st, the actual statutory basis that petitioners use is not 0 to a 1, it's 031 and 031 doesn't speak to an annual average basis. It instead speaks to the forthcoming calendar year, which is very clearly an individual year. I think that 0 to a 1, and this is, this is my interpretation, but 0 to a 1 and 031 can be read together and the average annual basis is actually referring to the fact that EPA has to do the percentage standard formula and 0.3, the annual renewable fuel percentage standard. Is is. Um, signified in an equation that's at 40 CFR, 80.1505 C, right? That sounds correct. I don't know the number off the top of my head, but it sounds correct. And so in the 2020 rulemaking. They said, okay, this is what we think that the annual renewable fuel percentage standard should be. And they set out that formula. It's got all the symbols and all of that and symbols mean different things. And so. So, the rulemaking. I guess what I'm getting at is that. What the petitioners, they say that they want to set aside this policy. In that was articulated and announced in the 2020 rulemaking. But really the manifestation of the policy. Is the formula and the formula is in regulation. And they haven't asked us to set aside the regulation, but. Isn't that really what they're. Asking us to do, or isn't that really the, the upshot if we grant them the relief. That they're asking for is that we would set aside 40 80.1405 C. I, so I think the relief that they're requesting has been very vague and has really shifted throughout the course of this litigation. So I don't want to speak for what what relief they're actually seeking, but it does seem like the only place that they've actually tethered. Any of their arguments to the 2020 rule is through the percentage standard formula. Maybe rather than ask you what relief they are seeking, because that is a question better put to them. Let me ask it this way if they come back on rebuttal and say, you're right. That is what we're seeking. What's your response to that? My response is the same, but the 2022 rule superseded the 2020 rule and readopted that it's that same formula. Therefore, the, that is the rule that would need to be challenged in order to challenge that formula, the removing that vacating the 2020 rule with respect with respect to the percentage standard formula. It does nothing to effectuate a change in the regulation. Would that be true every time? So, presumably. When you did the 2025 standards, you also. Stood by the right, the formula and the regulation. Does that mean that a challenge to the 2022 rule would be moved now. Well, I mean, I think every. You continue to use this policy and if. Using it again, move to prior challenge. So 2 things 1st, the key issue here is that EPA fully reopened this question to comment on it and fully reconsidered it. Therefore, in 2022, specifically, I was considering this formula and readopted it. But it is also true that by the very nature of the clean air act jurisdictional and venue provisions, that it is the case that any 2022 rule would be moved by 2025 because the, because clean air act very carefully channels all litigation into a single challenge to a rule, which is the problem here, because the testers are essentially arguing that they get to challenge the same thing twice and they don't get to do that. EPA superseded the regulation or superseded the rule with the 2022 rule and that was their only opportunity to challenge this formula. We may be confusing terms because it's 1 thing to challenge a rulemaking and it's another chain to challenge an agency policy. It can cross cut and be applied again and again in different rulemakings and so assume there was a policy adopted in 2020 not to count for prior years. And then that do you can do you consider what happened in 2022 to be the, the formal adoption of a of a final position on this prior years incorporation redress issue that would continue unless until changed by the agency. Yes, I think to the extent that EPA has adopted any policy on the prior years issue, it could only be in the 2022 rule. So, had they, let's say they filed, let's say they challenged it in 2022. And then litigation takes what time it takes and it's a new 2526 rulemaking comes out as a 2020 doesn't say boo about this issue. But they're not still challenging 2526. The policy adopted in 2022 about prior year. Yes, not if it was not reopened. So, if a reopened the issue in the 2025 rulemaking, they have to reopen it. That policy would still go. I assume in the formula reflect no change that you just said that would be the adoption of a policy and formal agency position on that question. That's really what you guys called it in 2022. and so, as long as that's still the live policy, that's going to get repeated. In every rule rulemaking. You think you visit every policy in every rulemaking? No, you don't. But under this is the, we're going to account for estimates of exemptions. We expect will be granted. You don't revisit that or reopen that in every rule, but it continues to be a practice. It does, but it's the same thing for what happened. We decided in 2022 and less than until. The agency decides to revisit that question, if it ever does, that is the answer that so that is the answer. So petitioner had to challenge it in 2022 to the extent. The question is, could they challenge it? And then when that litigation broke on too long, they'd have to challenge it in 2025 26. and then when that got too long, they'd have to challenge it in 2627. no, I'm sorry. I'm saying the opposite. You can only challenge it in the rule that actually address the issue. The fact that there is a continuing policy doesn't give you a new opportunity to challenge that issue. That's something that is more unique to the clean air act, because the clean air act really channels all litigation into a challenge within 60 days of the rule actually expressing that that policy and requires people to have submitted a comment on that issue. And for the, for all of the channeling that the clean air act does very specific to, you will challenge this rule. Once you will challenge it in the D. C. circuit if it's a nationally applicable rule and all of that channeling is through 42 U. S. C. 7, 6, 07. Okay, and then I'm struggling with what to do here. So they say, let's assume policy adopted in 2020. But they want to challenge because we got no explanation from the agency as to why they were not prior year adjustment. They want to say important important question error of law both of those approaches. And then 2022, the agency says, okay. We hear you, we are looking at this again. Here is our. Comprehensive review and our comprehensive answer. And then you say, in terms, and that is our finally answer to your petition for reconsideration, just what you say in 2022 and they go, we're all in. We're defending this rule. 100%. We have and make no objections whatsoever. But they can still go back. It just seems. I don't know. It just seems odd to me this. Are they, are you arguing there a stop that they're or something they made their decision in 2022 to endorse the rule. Fully have a note up and fully aware of your direct response to their petition for reconsideration and declaration. That's the final answer to it. So, they forfeited any challenge to that reconsideration petition. Yes, they waived or forfeited the challenge by not raising it in the Sinclair litigation. Alternatively, they're barred by latches because they waited until the Sinclair decision. They're a little confusing here because they did, you know, they kept their 2020 petition alive for all these years. So, it doesn't, it's not a doesn't look like a normal lashes case. It's just. I think outside, or at least it would look like you had your objection. They then they answered it and you said, we're all in. Hey, well, so I still think that the waiver and forfeiture fully apply. We also argued prudential mootness, but there's no real relief left for the court to offer. And it's an entirely different record. And the 1st record is stale all of those doctrines, I think, go towards the, how. Improper this is for judicial review, even if it is, even if it is judicially available that the court should instead stay at hand because petitioners should not be able to do this sort of piecemeal duplicative litigation where they challenge the same thing multiple times and multiple and multiple cases. Also, for what it's worth, it's not unusual for this court to put a case into a band while while the agency reconsiders the rule and for that reconsideration to affect nothing in terms of ending the 1st litigation, even if they fully reconsider the issue would have profound implications. I think for just how this court operates. Do you have a view you found on the other side said, if we're, if we get to deciding the legal question that they've presented your question of law, and we consider it on the basis of the, as adopted in the 2020 rule, that's what they've asked us to do we can still consider. Everything you said in the 2022. Reopening, I guess you call it reopening right? Right? Reopening. If we get, if we were to get more, we could still consider that even though that post dates by 2 years. The 2020 rule that would be under review. All right, do I agree that that you can consider analysis in the 2022 rule in deciding a, the legal, not the arbitrary purchase the legal challenge. If we're only deciding that, I mean, if we decided in this appeal, we're deciding to base just on 2020, what was adopted by the agency in the 2020 rule. I mean, I do think that it would be improper because another court has already considered the formula under the 2022 rule and on the record of the 2022 rule. So, I think doing this sort of backwards, sort of clawing back the 2022 rule via the 2020 rule, despite the fact that it's superseded the 2020 rule, I think is. Odd and and sort of procedurally difficult. That said, if the court is still going to consider the legal issue, then I think. I mean, I think that the agency's statements about its reasoning are very valid to the court's consideration. My questions do you need my questions? All right, thank you very much. So the intervene or now. Thank you, your honors. Good morning and may it please the court. Elizabeth Dawson on behalf of the intervenors, obligated parties, American fuel and petrochemical manufacturers and the small refineries. 1st, I'd like to start with just addressing the mootness question, and in particular, how important it is to remember that the 2022 rule, what we're calling the 2022 rule, not only superseded 2020, but also fully replaced it. Because that rule covered the compliance years, 2020, 2021 and 2022, so it is not just that EPA reopened and reaffirmed its legal reasoning with regard to the formula that 2022 rule or sorry, 2020 rule is completely replaced as such. There is no effective relief that this court could grant that would redress any injury that occurred because of the 2020 rule. When you say replaced. Are you saying that there is a specific part of the 2020 rule that in the 2022 rule said that part. Is no longer effective. Correct your honor with by the time promulgated the new 2020, the replacement 2020 rule, it changed the percentage standards to effectively reset them to the amount that has been produced in 2020. because if you will recall, this was kind of a generous situation where we had coded and so EPA was reconsidering the 2020 rule in that context. So, again, focusing on this part about relief and the fact that the petitioners are effectively seeking advisory opinion, I would go back to that Alaska versus. USDA case, because in that case, the court noted that it would be entirely inappropriate for the court to do as the state would want and issue an advisory opinion to guide the agricultural departments rulemaking. And that's exactly what they're seeking here. They're seeking to have EPA considered this court's opinion on the policy articulated in 2020 in these upcoming rulemakings. And as we know, EPA is now already in the midst of proposing. The 2nd version of the rule for 2026 and 2027, so they are hoping to influence that future rulemaking instead of dealing with whatever EPA ends up with on a full and complete record in that rulemaking in which they will have a full and fair chance to argue what they would like with regard to the meaning of the statute. But that is not appropriate for this court to consider at this time, because there is no effective relief that can be had for 2020. And unless you're supportive, any questions more about mootness, I would just turn to the merits for a moment. If I can have 1 minute, I just think should the court reach the merits to deny the petitions because there is no statutory authority. There is no reason to reconsider whether small refineries should have to reapply for exemptions that they were already granted in a previous year. And because it wasn't arbitrary or capricious for EPA to decide not to reallocate in the 2020 rule. Why is the saying that small refineries are essentially losing an exemption that they got in the prior year? If we're looking at this, it's just like a true up where the denominator we got to, you know, the EPA got the denominator wrong in the prior year. So, petitioners are asking EPA to increase future year standards based on what they deem to be under compliance or missed volumes in previous years. That would be taking those volumes, which were lawfully exempted amounts that small refineries under the statute shall not have to comply with and porting them over into a new year. And that would effectively, even though it would be spread out, would require small refineries to justify once again, why they shouldn't have had to comply with that percentage of their obligation for the prior year. And I think this also goes to the point that the court was making about. Whether this is really the only true up mechanism that petitioners are seeking with regard to small refinery exemptions versus other reasons that the volumes may not have been made. And there, for example, in Sinclair, where this court was deciding on EPA's decision to add a supplemental volume because of a legal error in 2016, that is very different from lawfully granted exemptions that EPA is by statute required to provide to small refineries that demonstrate that they qualify. That is not really a missed volume. That is a legal entitlement to a small refinery when it demonstrates that it is deserving of the exemption. So, it is not the case that it would be that EPA is not ensuring that these volumes are met by not accounting for a lawful exemption granted in a prior year. Any other questions? All right. Thank you. Okay. We will give you 2 minutes to rebut for a bow. Thank you. A few brief points when we filed this case, we had a valid challenge to the policy. The other side doesn't actually dispute that. They conceded. Their argument is that it became moot, but all that happened in the 2020 rule was an elaboration of the explanation for the position and that alone cannot render our original claim. Moot, they don't cite any case that says that they replaced the 2020 rule. It's clearly not true. The 2020 rule itself says that all it's doing is modifying the 2020 percentage standards. That's it. Otherwise, it explicitly says it's reaffirming everything that percentage standards. Are the applicant results by the formula, the formula. Yes, they're determined by applying the formula challenge the computational formula. That's correct. But we're not challenging our challenger is not about the application of the formula to particular numbers or percentages. It's the formula that stands independent of how it is applied in a specific year. That's the same policy that we challenge in growth energy case. And the court said, you have a direct challenge to the percent to the formula or the policy. And you have a challenge to the particular percentage standards that were set court separated the 2. I said, the challenge of the policy was time barred because he didn't reopen it here. He reopened. They revisited the issue. There's no, that's uncontested. The other side never argued the opener and the briefs. So, we have a live challenge, the policy, and all they're saying is it's moved because there was an elaboration of the explanation, but get more can't render cases moved because the agency goes out and says more about the reason in a later action. Moodness is 1 thing. What about waiver and forfeiture? What is. Why didn't you raise this argument in the Sinclair reset case? Well, the Union of concerned scientists, American maritime and motor equipment, give us the assurance that we were under no obligation to raise it in the later case. In those cases, of course, that we're not going to require a party to have to go out and litigate in a. This is the case. No, this is the earlier case. No, this is the 2020 literal steps only because we agreed to an event. I mean, while this case was pending, the 2022 rule came out. There was no, we never agree that our challenge here became moved because of the issuance of the 2022 case we stood on the sidelines because we thought that the 2022 case could foreclose our claim here. If the refineries challenge to the projection had succeeded, then we believe that would also mean we would never win our plan. In addition, at that time, he had announced a new exemption policy that would have wiped out all exemptions from 2018 onward and we looked at that and thought, if this holds up, we really don't have to worry about these exemptions anymore. So, there's no reason to force, you know, the cost and, you know, the time for us for the court litigate this issue. So we'll wait and see what happens. And then the exemption policy was reversed rule said it was looking at your reconsideration petition. And gave pages of answer and said, this. The 2022 rule is our final. Answer to your reconsideration petition. And we see you coming in saying the 2022 rule, we are all. And you didn't say on the sidelines, you were there, as I recall, intervening in support. That's not correct. We intervene in support of the rule with respect to rule. Yes. With respect to the projection. So that we weren't saying the whole thing was good. They gave you an answer. I mean, it's, it's, it's an, it's the strangest thing I've ever seen. Since we say, we are really upset in 2020 about this decision on our reconsideration petition and 2022, they say, okay, we will think about it again. And here is our answer. Lots of explanation. And this, this 2022 rule is our answer to your reconsideration petition on this precise issue of what to do about prior years. And then you show up in the litigation. And you don't say Bill about it. You don't say we support as parties do all the time. We support this part, but we don't support this part. It was right in this regard, but also this should have happened. You came in and you didn't say, boo. It sounded anyone looking at your brief. They would have said, well, like, I guess they're satisfied with the answer. They got to their reconsideration petition in the 2022 rule. And then, lo and behold, we're like, oh, no, we're still unhappy with our answer from 2020. Well, the only issue that was presented was the projection issue and we can find our, we couldn't, we weren't a petitioner. We were intervener. So we were intervening. To defend, we could have, but we didn't show us not to. You made a strategic decision. Well, we had a right not to because of cases like the Union of Concerned Scientists. We had a valid live case. Concerned scientists involved them between the interim rule and the final rule, objecting to something in the interim rule, and then coming in on the final rule and saying we are on board and not saying a word about their objections that they still had. Did that happen in those cases? The case was decided before the 2nd litigation occurred. So, so there was no occasion for it. This happened because we agreed to an advance. This is very different. It is different, but it's not different in the fundamental way about how to respond to the 2022 rule, which incontrovertibly was EPA's answer to your reconsideration petition. And now you're asking this court to review the 2020 answer to your reconsideration petition. You spent all that time pointing to that footnote when you said they're answering our reconsideration. Yes. So you want someone to look to their 22, 2020 answer to your reconsideration petition, but not your 2022 reconsideration petition when you had every opportunity to challenge it then and you didn't. It's the same policy they all they did in 2022 is reaffirm the policy. 0 explanation in 2020. I understand what your challenge would have been. And you got lots of explanation and you, you didn't say about it. No, we didn't need to. We will be preserved. I mean, this case was preserved. It was on ice. We had a valid challenge. It was in advance. I can't I just it's astonishing to me that it would have been very easy to file a 2nd petition. Because it's oh, they've now answered again, our petition and it's still no improvement. Well, this was a lot from an awful lot of and having this answered based on the 2020 record. This was the 1st time that EPA revisited the policy and decided that in some sense, this can made more sense. This was the 1 that all the 2nd one did was reaffirm. They didn't decide they were dealing with 1 particular issue. And then you must have pointed out to them that, hey, we still haven't got an answer on this. And so in 2022, they gave it to you 2020. they're making the middle of it respectfully. Your honor. I disagree with that characterization our petition for reconsideration. That was before the agency covered the past retroactive exemptions. And then the final rule, he said, this is our completion of the process in responding to that petition. And we are sticking by not accounting for past. We met it, we were saying, finally, you were saying that in 2020. Decided if you, your answer to your reconsideration petition. Yes, what. What other evidence other than. What stated in this rule, do you have for that? For instance. Does does a have a docket. And don't they put an entry on the docket. When they have closed or resolved. A reconsideration petition, the petition is listed on a web page. I don't believe there's anything about. A decision on that listed on that page. That is, I don't think there's anything stated. I could be wrong, but I don't think there's anything stated there about a decision, but everyone, I mean, we understood and the agency understood that the 2020 rule. Was the decision on the petition? I do have 1 piece of evidence. Then why did they spill 3 pages of ink on it in 2022? well, they went back to it. I mean, we're an important stakeholder in this process. The refineries are the agency listens to what we say. There are conversations in between. They go back to the issue. I'd like to read. This is more evidence. This is from the 2022 room. It J. 2217. we are reaffirming our response to that petition. That's saying we decided the petition in 2020, we resolve the issues. It was the completion of our process. And now we were visiting it once again. And we're standing by what we did in response to that petition in 2020. And this, this action constitutes our final and complete response to that petition. I'm assuming you guys saw that when the 2022 rule came out. Yes, this is our final response to your petition and yet you chose. Not to seek review, not to petition for review. That's to go in and support and not have any quality. If there's something in your brief from 2022, that drops a footnote saying, by the way, we're still unhappy about that. Let me know. But as far as I can tell, you didn't say anything. You got this answer. We were looking, you're a stakeholder. We've had conversations. So we are looking at your petition again. And we are giving you all the answer that we have given in here and yes, we're reaffirming. We've looked at it all and we've come to the same conclusion. Agencies sometimes do that. Sometimes they change. Yes, but they looked at it again and told you this is a final and complete response to that petition. Yes. And you didn't do anything about it. Because we had this because you were happy with the 2020 response, even though you just told us you had conversations, intervening conversations. You're a stakeholder. They care about your views. We weren't happy with the response. We were litigated. We had filed a petition to review the response. We disagreed with it and we had that case preserved. We filed it timely. It was in advance and we knew we should go back or we believed consistent with the case. Although we could go back to that case. So, is it your position that the formula. At in the. 40 CFR. Section 80.1405 C. But that formula is wrong. Yes, that that formula embodies a policy that we say is invalid as a matter of law. Because it excludes any accounting for past retroactive exemptions. So, why didn't you just ask us to set aside that regulation? I don't think there's a difference in asking you to set aside the rule or act on the rule that. Make that regulation and set aside the regulation that was that was that particular formula first adopted in the 2020 rule, or had that formula been adopted? So, there was a formula that predated the 2020 rule that prior version did not include any accounting for retroactive exemptions. The 2022 excuse me, the 2020 rule modified the formula to insert a variable for projected retroactive exemptions, but not a variable for past attractive exemptions. And that is the formula as it exists today. So, so the formula at this particular subsection, 80.1405 C. Was modified in 2020. Yes, and not modified in 2020. We're not modified in 2022. Correct. If we had brought this challenge, it's history at the end of the rule shows that it was modified in 2022, not in the relevant. Respect, maybe there was some other change, but not with respect to in 2019. That's correct. I'm sorry, I thought I heard you say, and he changed it in 2019. No, and 20, the 2020 rule modified it and the rule modified it. The 2022 rule did not modify with respect to the exemption in 2020 and then 2022. yeah, but the 2020 rule did not modify it with respect to the exemption accounting. There may have been some other, the formula does a lot of things may have been some other change that I don't recall, but it wasn't about exemptions. The only modification for exemptions in 2020, when, when. When did the formulas 1st, not. Include a prior year form account for prior years. For exemptions, probably, I mean, I might get back to 2010, 2011, 2012, somewhere around there. That's the 1st time. It didn't do what you think it should have. That's why we lost the growth energy case in the 2019 rulemaking case because you're untimely. We're untimely. I would I also just to speak to the data point I wanted to just mention our footnote to, and the reply we do ask for cater there. I probably would formulate the language differently in retrospect, but we were asking for a big cater with respect to page 2. it's on page. Well. The relevant senders on page 6, the footnote starts on page 5. Contrary to interjection, the court could invalidate the challenge policy and remand the rule. Without vacature, yes, or can vacate the rule. So, you're like, well, you could do either 1. so I look to what you're actually asking us to do and it's being. Okay. Well. Vacate and remand partially vacate and remand. Please have you asked for declaratory judgment? And you get that under me? Yeah, I mean, the cleaner act allows you to declare the. The action on lawful, I believe I believe this. Formulated as a form of release, honestly, I don't think I've ever seen a brief in an APA case that are releasing these cleaner cases that does it as a distinct form of release that's requested. If you did that, we would be happy with with that outcome as well. I'm just asking the question. I'm not quite sure how they all intersect mom quite a bit over had a couple more points. But I will receive if I exhausted my, we have, we have exhausted you. I'm afraid. Thank you very much. We're grateful for your assistance and assistance from the government and intervener. The case is submitted. Thank you.
judges: Millett; Wilkins; Garcia